RECEIVED
IN ALEXANDRIA, LA.

MAY - 7 2010

TONY R. MOORE, CLERK
BY_____
DEPUTY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

MARK A. VINZANT                           CIVIL ACTION NO. 2:06-cv-10561

-vs-                                                                    JUDGE DRELL

UNITED STATES OF AMERICA et al.          MAGISTRATE JUDGE SHUSHAN

## RULING

Pending before the Court in this matter are: (1) a Motion to Dismiss for Lack of

Subject Matter Jurisdiction (Doc. 141) filed by the United States of America

("government"); and (2) a Motion for Transfer of Venue (Doc. 157), filed by Mark A.

Vinzant ("Mr. Vinzant").[1] For the reasons below, the government's motion will be

GRANTED, and Mr. Vinzant's motion will be DENIED. Disposition will follow by a

separate order.

## I.   Background

Mr. Vinzant originally filed this lawsuit on November 27, 2006 in the United

States District Court for the Eastern District of Louisiana. (Doc. 1). His claims arise

out of a rather unique set of circumstances. On July 7, 2005, Mr. Vinzant, then a

federal inmate, was being transported in one of two transport vans driven by

deputies of the United States Marshals Service ("USMS").[2] The vans were traveling

---

[1] The Court is aware that a third motion was filed in the case on September 1, 2009 - a Motion in Limine to Strike Report and Testimony of Ralph Dumouchel, D.C. (Doc. 87). This motion will be addressed by a separate, future ruling.

[2] Mr. Vinzant identified Deputy Marshals M. Gerald Dysart ("Deputy Dysart") and J. Douglas Farrell ("Deputy Farrell") as the individuals driving the vans. Both deputy marshals (collectively, "marshals") were named as defendants, and both were subsequently terminated on June 7, 2007, by

one behind the other on Interstate 10 at Power Boulevard in Metairie, Louisiana, from downtown New Orleans to the Louis Armstrong International Airport. The weather was rainy and stormy, and traffic was congested. At some point during the trip, both vans were involved in a multi-vehicle accident in which Mr. Vinzant claims to have suffered long-term injuries. These general facts are undisputed.

The details of the accident, however, remain subject to controversy. Mr. Vinzant claims that Marshals Dysart and Farrell operated the transport vans recklessly, which caused the accident. Specifically, Mr. Vinzant, and a number of other inmates aboard the transport vans whose declarations were attached to the complaint, claim that the marshals were speeding and carelessly weaving through traffic, despite the dangerous weather conditions. According to the inmates, the lead van, driven by Marshal Farrell and carrying eight inmates, rear-ended a vehicle in front of it. Then, the second van, driven by Marshal Dysart and with Mr. Vinzant and eight other inmates aboard, collided with the lead van. Thereafter, the second van was struck from the rear by a privately-owned vehicle driven by M. Damian Every ("Mr. Every").[3] Significantly, all of the inmates' accounts involve the second van colliding with the lead van *before* Mr. Every collided with the second van.

The marshals' report of the accident differs substantially from that of the inmates. Both marshals stated that they were not, to their knowledge, violating any

---

an order from the district court substituting the United States for the marshals as a defendant in the case. (Doc. 45).

[3] Mr. Every, along with his insurer, were initially named as defendants in the case. However, the district court dismissed all claims against them on March 28, 2007, as barred by the applicable prescriptive period under Louisiana law. (Doc. 20). The remaining claims against the United States are governed by a longer prescriptive period under federal law.

traffic laws which may have contributed to the accident. (Docs. 86-3, 86-4). Neither marshal received a citation during the investigation of the accident. The marshals allege that traffic ahead of the lead van came to a complete stop, and that the lead van stopped without striking any other vehicles. Then, the second van came to a stop, also without striking any other vehicles. After a definite pause, and while both USMS vans were at a complete stop, an accident occurred behind the second van, which caused Mr. Every's vehicle to collide with the second van. The second van was thereby pushed into the first van. The Uniform Motor Vehcile Traffic Crash Report (Doc. 1-1, p. 9) supports the marshals' version of the incident in large part.

Clearly, these accounts contain divergences which are critical to the assessment of liability in this case.[4] The parties agree, however, that at the time of the accident, neither Mr. Vinzant nor any of the other inmates in the USMS vans were wearing safety belts. The fact that the USMS transported Mr. Vinzant without securing him inside of the van with a safety belt represents at least one potential basis of liability against the government. Mr. Vinzant seeks monetary relief under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, for the alleged acts of negligence on the part of the USMS deputy marshals.

On January 4, 2010, Mr. Vinzant filed a Motion to Recuse or Disqualify the District Judge (Doc. 146), alleging that the district judge was unable to fairly evaluate the credibility of the marshals. The district judge granted the motion, reasoning that, "[i]n a case such as this, where the Judge's impartiality is questioned because the

---

[4] These factual disputes compelled our sister court to deny the government's motion for summary judgment on September 17, 2009. (Doc. 109).

very marshals who's [sic] conduct is the subject of the action provide security for the Court, the impartiality of the entire district court is called into question." (Doc. 154, p. 3). Shortly thereafter, the case was transferred to this Court. (Doc. 156).

Now before the Court are two competing motions. The first is a Motion to Dismiss for Lack of Jurisdiction filed by the government (Doc. 141), seeking dismissal of the plaintiff's claim based upon the failure to secure inmates with safety belts under the "discretionary function" exception to the FTCA. The second is a Motion for Transfer of Venue (Doc. 157), seeking transfer of this case to the United States District Court for the Northern District of California. After carefully reviewing the record and the parties' filings, the Court is prepared to rule on both motions.

## II.  Law and Analysis

### A.  Motion to Dismiss

The government moves to dismiss Mr. Vinzant's claim arising from the marshals' failure to secure him inside of the van with a safety belt. The government alleges that the decision not to secure inmates with safety belts during transport falls under the discretionary function exception to the FTCA. Thus, the Court lacks subject matter jurisdiction to consider the claim. We agree.

#### 1.  *Standard for Motion to Dismiss*

Pursuant to Fed. R. Civ. P. 12(b)(1), a party may obtain dismissal of a claim for lack of subject matter jurisdiction. When considering a Rule 12(b)(1) motion, however, the Court must "'view all the facts in a light most favorable to the plaintiff.'" Ambraco, Inc. v. Bossclip B.V., 570 F.3d 233, 237-38 (5th Cir. 2009) (quoting Ginter ex

*rel.* Ballard v. Belcher, Prendergast & Laporte, 536 F.3d 439, 441 (5th Cir. 2008)).

Generally, when the complaint states a "cognizable federal claim, dismissal for want

of jurisdiction is disfavored as a matter of policy," and "is only proper in the case of a

frivolous or insubstantial claim, i.e., a claim which has no plausible foundation or

which is clearly foreclosed by a prior Supreme Court decision.'" Young v. Hosemann,

598 F.3d 184, 188 (5th Cir. 2010) (quoting Bell v. Health-Mor, 549 F.2d 342, 344 (5th

Cir. 1977)). Nonetheless, the party asserting jurisdiction bears the burden of proof on

a motion to dismiss. Davis v. United States, 597 F.3d 646, 649 (5th Cir. 2009).

In deciding a Rule 12(b)(1) motion, the Court may consider evidence outside of

the pleadings and the attachments thereto. Ambraco, Inc., 570 F.3d at 237-38. More

specifically, "under Rule 12(b)(1), the court may find a plausible set of facts by

considering any of the following: '(1) the complaint alone; (2) the complaint

supplemented by the undisputed facts evidenced in the record; or (3) the complaint

supplemented by undisputed facts plus the court's resolution of disputed facts.'"

Lane v. Halliburton, 529 F.3d 548, 557 (5th Cir. 2008) (quoting Barrera-Montenegro v.

United States, 74 F.3d 657, 659 (5th Cir. 1996)). However, when the Court must refer

to matters outside of the pleadings, "no presumptive truthfulness attaches to the

plaintiff's allegations, and the court can decide disputed issues of material fact in

order to determine whether or not it has jurisdiction to hear the case." Montez v.

Dep't of Navy, 392 F.3d 147, 149 (5th Cir. 2004).

    2.    *The FTCA*

It is well settled that "'the United States as sovereign, is immune from suits

save as it consents to be sued.'" Creel v. United States, 598 F.3d 210, 213 (5th Cir. 2010) (quoting Linkous v. United States, 142 F.3d 271, 275 (5th Cir. 1998)). "'Absent a waiver of sovereign immunity, the federal government is immune from suit.'" Wagstaff v. U.S. Dep't of Educ., 509 F.3d 661, 664 (5th Cir. 2007) (quoting Lewis v. Hunt, 492 F.3d 565, 570 (5th Cir. 2007)).

The FTCA constitutes a limited wavier of the federal government's immunity from suit. See Linkous, 142 F.3d at 275. "Under the FTCA, Congress has waived sovereign immunity and has granted consent for the government to be sued for acts committed by any 'employee of the Government while acting within the scope of his office or employment.'" Id. (quoting 28 U.S.C. § 1346(b)). Stated otherwise, "[t]he FTCA abrogates the Government's sovereign immunity for torts committed by its employees in circumstances where, if the Government were a private person, the Government would be liable under state law." Martin v. Halliburton, No. 09-20441, 2010 WL 1038565, at *7 (5th Cir. Mar. 23, 2010). However, we note that "[c]ourts must strictly construe all waivers of the federal government's sovereign immunity, and must resolve all ambiguities in favor of the sovereign." Id. Therefore, the limited waiver of sovereign immunity found in the FTCA must be strictly construed in favor of the government. See Leleux v. United States, 178 F.3d 750, 754 (5th Cir. 1999).

> 3. *The Discretionary Function Exception to the FTCA*

The FTCA contains a number of exceptions, including the discretionary function exception, which provides as follows:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or

regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a). To fall within discretionary function exception, the government employee's conduct must satisfy a two-pronged test ("Gaubert test"): (1) "the conduct must involve 'an element of judgment or choice'"; and (2) "the judgment or choice must be based on considerations of public policy, for that is the kind of judgment the discretionary function exception was designed to shield." Davis, 597 F.3d at 650 (quoting United States v. Gaubert, 499 U.S. 315, 322 (1991)).

Under the first prong of the Gaubert test, the Court must find that there was "'room for choice in making the allegedly negligent decision.'" Ashford v. United States, 511 F.3d 501, 505 (5th Cir. 2007). Conversely, the existence of a mandate guiding the government employee's conduct makes the discretionary function exception inapplicable to the conduct:

> "Under this [first] prong, we determine whether a statute, regulation, or policy mandates a specific course of action. If such a mandate exists, the discretionary function exception does not apply and the claim may move forward. When no mandate exists, however, the governmental action is considered discretionary and the first prong is satisfied."

Castro v. United States, 560 F.3d 381, 387 (5th Cir. 2009) (quoting Garza v. United States, 161 F. App'x 341, 343 (5th Cir. 2005)).

The government maintains that the decision not to secure inmates with safety belts was the product of discretion, because no statute or other mandate requires (or prohibits) the use of safety belts during inmate transport. Rather, the government

argues, Executive Order 13043 requires government employees in the front seat of government vehicles to wear safety belts, but "deputies transporting prisoners are not required to seat belt prisoners in the back seat(s) of [government-owned vehicles]." (Doc. 141-1, pp. 3-4).

In support of this argument, the government submitted a declaration from the Acting United States Marshal for the Eastern District of Louisiana, Steven Hartman ("Marshal Hartman"). (Doc. 141-3, Exh. 1). Marshal Hartman explained that before 1987, the year that the United States Marshals Service Manual was revised, it was required that prisoners be secured with safety belts during transport. In the revised version of the manual, however, all mandatory language regarding safety belts was omitted. Marshal Hartman is aware of no mandate to secure inmates with safety belts, and understands the decision to be within the discretion of each United States Marshal. In the Eastern District of Louisiana, obviously, the choice has been made not to use safety belts during inmate transport.[5]

The Court agrees with the government on the first prong of the Gaubert test. In the absence of a mandatory statute, policy, or guideline requiring the USMS to use safety belts during inmate transport, the evidence before the Court indicates that the decision is committed to the discretion of the Acting U.S. Marshal in each district. In

---

[5] The Fifth Circuit recently examined similar discretion in the context of a failed rescue in the wake of Hurricane Katrina. Davis, 597 F.3d at 650. In that case, a Navy helicopter crew attempted to hoist a woman from an expressway to the helicopter using a rescue strop, rather than a rescue basket. Id. at 649. The woman's arms came free of the restraining straps, and she fell forty feet back onto the expressway. Id. The woman died as a result of injuries sustained during the fall. Id. Although the Navy's Search and Rescue Manual contained some mandatory language, a provision in the manual allowed rescuers to deviate from procedure as the circumstances dictate. See id. at 650. The court thus held that the rescuers' choice to use the rescue strop was shielded by the discretionary function exception. See id.

the absence of a prohibiting guideline, Marshal Hartman (or his predecessor) could have chosen to use safety belts to secure inmates in transport vehicles. Thus, the decision not to secure inmates with safety belts during transport involved an "an element of judgment or choice." Gaubert, 499 U.S. at 322.

Under the second prong of the Gaubert analysis, the Court must determine whether the judgment made by the employee was "of the kind that the exception was designed to shield," Ashford, 511 F.3d at 505, or in other words, "whether the act in question is susceptible to policy analysis." Baldassaro v. United States, 64 F.3d 206, 211 (5th Cir. 1995) (internal citation omitted). The purpose served by this second inquiry "is to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and public policy through the medium of an action in tort." Gaubert, 499 U.S. at 322-23. Moreover, "[i]f a regulation allows employee discretion, the regulation creates a 'strong presumption' that the discretionary act authorized by the regulation involves the same policy considerations that led to the creation of the regulation." Davis, 597 F.3d at 650 (quoting Gaubert, 499 U.S. at 324).

The use of safety belts in transport vehicles creates the possibility that inmates will use the safety belt to break or escape from handcuffs or to attack marshals. In addition, marshals may be attacked while in close proximity to inmates during the process of buckling and unbuckling safety belts. As Marshal Hartman stated, "[e]ach United States Marshal must balance the risk of prisoner escape and the safety of employees, the public, and other prisoners within a transport vehicle

9

against the risk of injury to a prisoner resulting from the non-use of seat/safety belts." (Doc. 141-3, Exh. 1, p. 2). These are precisely the types of policy considerations that are protected by the discretionary function exception. Thus, we agree with the government as to the second prong of the Gaubert test.

However, Mr. Vinzant indicates that we should be guided by state motor vehicle and traffic laws in this case. Mr. Vinzant correctly indicates that, in FTCA actions, courts must apply the substantive law of the state in which the alleged tort occurred. See 28 U.S.C. § 1346(b)(1); Johnson v. Sawyer, 47 F.3d 716, 727 (5th Cir. 1995). The Court is thus required to look to Louisiana statutes governing the use of safety belts, which currently provide that:

> each occupant of a passenger car, van, or truck having a gross weight of ten thousand pounds or less . . . shall have a safety belt properly fastened about his or her body at all times when the vehicle is in forward motion, if a belt for his seating space has been provided by the manufacturer.

La. R.S. § 32:295.1. However, in 2005, when the accident occurred, Louisiana law only required that "each front seat occupant" of a passenger vehicle wear a safety belt. Id. § 32:295.1 (2005), amended by La. Acts 2009, No. 166, § 1 (eff. Aug. 15, 2009). It was only in 2009, four years after the accident at issue here, that the Louisiana legislature deleted the phrase "front seat" and required that "each occupant" in a passenger vehicle wear a safety belt. La. Acts 2009, No. 166, § 1. Therefore, the USMS policy at the time of the accident did not conflict with state law, at least not as applied to rear seat occupants like Mr. Vinzant.[6]

---

[6] Of course, the USMS policy does conflict with Louisiana law as it currently stands.

Moreover, the government cites an opinion of the United States District Court for the District of Vermont, considering the very same issue, and granting the government's motion to dismiss. MacCaffray v. United States, No. 2:97-CV-403, 1998 WL 560047, at *2-3 (D. Vt. Aug. 27, 1998). In that case, the prisoner-plaintiff was injured in a car accident while being transported by deputies of the USMS. Id. at *1. The plaintiff claimed that the marshals were speeding in poor weather conditions, and that the transport vehicle was not equipped with safety belts. Id. The court dismissed the plaintiff's claim for lack of subject matter jurisdiction under the discretionary function exception, explaining that

> [t]he decision by the U.S. Marshals Service for the District of Vermont not to install seat belts for prisoners in its transport vehicles was made in the clear exercise of its judgment. . . . [and] was based upon sound safety concerns involving the use by prisoners of the safety belts to break handcuffs and escape, or any attempts to injure deputies who were fastening and releasing their seat belts.

Id. at *3.[7]

The court's decision in MacCaffray, of course, is not binding upon the Court, but we do find its factual similarities and reasoning persuasive. In this case, just as in MacCaffray, the decision not to secure inmates with safety belts during transport is a classic example of the type of policy choice that is shielded by the discretionary function exception to the FTCA. Because we must strictly construe the provisions of the FTCA in favor of the government, and because there was a rather clear exercise

---

[7] Mr. Vinzant points out that the vehicles used by the Marshals in MaCaffray were not equipped with safety belts, while the van in which he was transported was equipped with safety belts that were not used. While we note the distinction, we find it irrelevant to our disposition. The issue in this case centers around why safety belts were not used to secure inmates during transport, regardless of whether the transport vehicle was equipped with them in the first place.

of discretion in this case, the government's motion to dismiss Mr. Vinzant's claim regarding the marshals' failure to secure him with a safety belt will be GRANTED. The other alleged bases of liability under the FTCA suggested by Mr. Vinzant in his complaint remain viable.

## B.    Motion for Transfer of Venue

Mr. Vinzant filed a motion to transfer this lawsuit to the United States District Court for the Northern District of California under 28 U.S.C. § 1404(a). (Doc. 157). That statute states that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Id.

District Courts "have 'broad discretion in deciding to order a transfer'" under § 1404(a). In re Volkswagen of Am., Inc., 545 F.3d 304, 311 (5th Cir. 2008) (quoting Balawajder v. Scott, 160 F.3d 1066, 1067 (5th Cir. 1998)). However, our discretion is necessarily limited by the terms of §1404(a) as well as precedent interpreting the statute. Id. The movant must bear the burden of establishing "good cause" for the proposed transfer. Id. at 315. "[T]o show good cause means that a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" Id. Moreover, whether the case has progressed significantly in the original forum is a relevant consideration in analyzing a motion under § 1404(a). See Tarver v. Colonial Life & Acc. Ins. Co., 294 F. App'x 873, 878 (5th Cir. 2008).

12

"The preliminary question under § 1404(a) is whether a civil action 'might have been brought' in the destination venue." *In re* Volkswagen of Am., Inc., 545 F.3d at 312. Mr. Vinzant argues, and the government concedes, that this action could have originally been brought in the Northern District of California. Under the FTCA, Mr. Vinzant could have filed suit either "in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." 28 U.S.C. § 1402(b). Although the accident occurred in Louisiana, Mr. Vinzant was a California resident when he initially filed the lawsuit (Doc. 1, p. 1), and still lives in California today. As such, Mr. Vinzant has satisfied the threshold question posed by the statute.

Having determined that the transferee forum is one in which the lawsuit could have been brought, we must next consider whether the proposed transfer will serve "the convenience of the parties and witnesses . . . and the interests of justice." Broussard v. State Farm Fire and Cas. Co., 523 F.3d 618, 631 (5th Cir. 2008). Courts in our circuit must consider a non-dispositive list of public and private interest factors in evaluating the "convenience" of the proposed transfer:

> These private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.

Action Indus., Inc. v. U.S. Fidelity & Guar. Co., 358 F.3d 337, 340 & n.8 (5th Cir. 2004) (citing Syndicate 420 at Lloyd's London v. Early Am. Ins. Co., 796 F.2d 821, 831 (5th

13

Cir. 1986)). We will consider these lists of factors in turn.

1.    *Private Interest Factors*

Beginning with the "private interest" factors, the Court finds the second and third listed factors - "the availability of compulsory process to secure the attendance of witnesses" and "the cost of attendance for willing witnesses" - to be of little consequence in this case. Id. Compulsory process would be available in either forum. At least some costs would be assessed for the attendance of the fact witnesses at a trial here or in California, but the costs would be greater if the motion to transfer were granted. In any case, the costs are not potentially substantial enough to be an overriding consideration in our analysis.

However, the first listed factor, "relative ease of access to sources of proof," militates in favor of denying the motion to transfer. Id. The sources of proof (witnesses) in this case are largely centered in this state; specifically, in the Eastern District of Louisiana. All of the government's potential fact witnesses reside in Louisiana. The officer who investigated the accident and the driver of the third vehicle involved in the accident are likewise Louisiana residents. Mr. Vinzant himself seems to be the only fact witness who is not a resident of Louisiana, but he is also a party.[8] While we recognize that counsel for the government would not be especially inconvenienced by a transfer - Assistant United States Attorneys in California would

_____

    [8] Mr. Vinzant has not indicated any intention of calling other inmates who were in the transport vans, but as noted above, declarations from some of those inmates were attached to the initial complaint. Moreover, the government is correct to point out that the opinions of Mr. Vinzant's treating physicians, who reside in California, may be submitted to this Court via medical records and deposition transcripts if necessary and prudent.

14

likely simply assume the case upon its transfer - the government's witnesses would be forced to undertake significant travel obligations.

The Court must also consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." Id. Mr. Vinzant articulated a number of facts that fall within this expansive category, including that: (1) he has persistently attempted to retain counsel in Louisiana, without success; (2) he may have better fortune in retaining counsel in California; (3) he is a disabled junior college student, and thus, travel and lodging expenses for a trial in Louisiana would place substantial financial burdens upon him; (4) frequent absences may impede his educational progress; and (5) his physical and mental health may be jeopardized by the stress of extended travel to and litigation in Louisiana. We acknowledge that these facts are considerations.

But, the government points out, and appropriately so, that all of Mr. Vinzant's hardships existed when he chose to file the lawsuit in the Eastern District of Louisiana. Our review of the exhibits attached to Mr. Vinzant's motion also made clear that many of the attorneys contacted by Mr. Vinzant felt pressured by the impending trial in this matter when it was scheduled in the Eastern District of Louisiana. This Court, on the other hand, has not yet set a trial date in the case, though that action is near. As a result of the transfer to this Court, then, Mr. Vinzant not only has more time to secure representation, but also a different market of attorneys to explore. Retention of counsel would relieve the stress of litigation, and perhaps reduce his expenses as well.

Although we understand the alleged difficulties of litigating this case for Mr. Vinzant, we must also recognize that he filed this lawsuit and chose the original forum while living in California. Those facts, coupled with the opportunity to retain counsel and alleviate his physical, mental, and financial stresses, lead the Court to give little weight to Mr. Vinzant's arguments regarding the private interest factors. Furthermore, Mr. Vinzant identified only hardships involving himself, and not other litigants or witnesses in the case, which necessarily limits the sway of his arguments. See generally Smilde v. Snow, 73 F. App'x 24, 25 (5th Cir. 2003) (affirming a district court's denial of a motion to transfer under § 1404(a) when the plaintiff delayed for nearly four months in filing the motion, and when the plaintiff "did not show that transferring the case would be more convenient for any party or witness except himself"). Therefore, the Court finds that the private interest factors, on the whole, weigh against Mr. Vinzant's motion to transfer.

### 2. *Public Interest Factors*

The first and second "public interest" factors have little significance in the instant case. The Court has no information as to the potential "administrative difficulties" that may arise from "court congestion" following a transfer of this case. Action Indus., Inc., 358 F.3d at 340 & n.8. Likewise, any "interest in having localized controversies decided at home" would be minimal. Id. Although the accident took place in Louisiana, no special circumstance warrant our assigning great importance to this factor. Likewise, the fourth public interest factor is irrelevant, because no conflict of law issues would arise if the case were transferred. As noted above, under

16

the FTCA, Louisiana substantive law must be applied, no matter what court ultimately decides the case. See 28 U.S.C. § 1346(b)(1)

However, the third public interest factor, involving "the familiarity of the forum with the law that will govern the case," suggests that a Louisiana court would be a more appropriate forum in this case. This Court, for obvious reasons, is more likely to be familiar with Louisiana law than a district court in California. This factor supports the government's position.

Thus, because both sets of factors favor adjudication in a Louisiana court, Mr. Vinzant's motion to transfer will be DENIED.

## III. Conclusion

For the foregoing reasons, the government's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 141) will be GRANTED, and Mr. Vinzant's Motion for Transfer of Venue (Doc. 157) will be DENIED.

SIGNED on this 12 day of May, 2010 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE