UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARK A. VINZANT | CIVIL ACTION NO. 2:06-cv-10561 |
| -vs- | JUDGE DRELL |
| UNITED STATES OF AMERICA, et al. | MAGISTRATE JUDGE SHUSHAN |

### RULING

Now before the Court is motion for sanctions (Doc. 171)[1] filed by the Plaintiff, Mark A. Vinzant ("Mr. Vinzant"), against the Defendant, the United States of America ("government"), and its counsel. Also pending is a Motion for Protective Order (Doc. 177) filed by the government. Because the substance of both motions is closely intertwined, and because trial in this matter is fast approaching, we will consider the motions jointly for purposes of this ruling. For the reasons below, both motions will be DENIED. Disposition will follow by a separate order.

### I.   Background

This lawsuit arises from an automobile accident that occurred on July 7, 2005. Mr. Vinzant was a federal inmate at that time, and was a passenger in one of the vehicles involved in the accident. Mr. Vinzant was riding in one of two transport vans en route to Louis Armstrong International Airport. Both vans were being driven

---

[1] The document was not technically filed as a motion, but rather, as a memorandum. Nonetheless, the Plaintiff seeks sanctions, and the Court will properly treat it as a motion. The Plaintiff is proceeding *pro se*. In accordance with settled precedent, the Plaintiff's filings will be held to a less exacting standard than the filings of a licensed attorney, and the arguments within those filings will be construed liberally. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972); see also Windland v. Quarterman, 578 F.3d 314, 316 (5th Cir. 2009) (noting the "well-established precedent requiring that we construe *pro se* briefs liberally"). We observe also that the United States has responded to Mr. Vinzant's filing as a motion or request for sanctions. (Doc. 172).

by deputies of the United States Marshals Service ("USMS"). Mr. Vinzant seeks damages under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, for injuries that he sustained during the accident. In summary, Mr. Vinzant alleges that the marshal-drivers were negligent, and thus proximately caused the accident. The USMS gives a diametrically opposite account of the key events leading up to the accident.

The lawsuit was transferred to this judge on January 19, 2010 by special order (Doc. 156), shortly following a recusal by all of the judges of the United States District Court for the Eastern District of Louisiana (Doc. 154). On May 19, 2010, the Court held a telephone status conference with the parties to discuss a number of pretrial issues. Following this status conference, the Court issued an order which, among other things, required the government to "respond to any outstanding interrogatories propounded to the [government] by [Mr. Vinzant]" within ten calendar days. (Doc. 167). The government did so respond, but as it had in the past, continued to object to the disclosure of the contact information of the sixteen other inmates who were also being transported by the USMS at the time of the accident ("inmate witnesses"). The government's refusal to disclose this contact information is the principal basis of conflict between the parties at this point.

The Court held another teleconference on June 2, 2010, and afforded both parties the opportunity to file memoranda discussing the disputed issues. (Doc. 168). The government offered to disclose the contact information if Mr. Vinzant would agree to sign a stipulated protective order. Instead, Mr. Vinzant filed the instant

motion for sanctions (Doc. 171), alleging that the government's responses to his interrogatories violate the Federal Rules of Civil Procedure, local rules, and this Court's discovery order. He also contends that this violation is merely the latest in a long and continuing pattern of discovery abuses by the government.

In response, the government initially filed a memorandum expressing both its objections to the disclosure of the information, and its willingness to disclose the information if Mr. Vinzant would sign a protective order. (Doc. 169). In a separate memorandum opposing Mr. Vinzant's motion for sanctions, however, the government withdrew its offer of voluntary disclosure, and now moves for entry of a protective order forbidding the disclosure of the contact information for the inmate witnesses. After carefully reviewing the parties' filings, and the evidence attached thereto, the Court is now prepared to rule on both motions.

## II. Law and Analysis

### A. Motion for Sanctions

Fed. R. Civ. P. 37(b)(2), subtitled "Sanctions in the District Where the Action Is Pending," applies where a party "fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a)." In such situations, "the court where the action is pending may issue further just orders," including:

> (I) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;

3

(v) dismissing the action or proceeding in whole or in part;
(vi) rendering a default judgment against the disobedient party; or
(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Id. "The Supreme Court has noted that rule 37(b)(2) 'contains two standards-one general and one specific-that limit a district court's discretion.' 'First, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery.'" Compaq Computer Corp. v. Ergonome Inc., 387 F.3d 403, 413 (5th Cir. 2004) (quoting Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 707 (1982)).

It is axiomatic, however, that, in order to impose any sanction in this case, we must first determine that the government has "fail[ed] to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). Mr. Vinzant alleges that the government has violated (1) Fed. R. Civ. P. 26(a)(1), governing initial disclosures; and (2) this Court's May 19, 2010 discovery order, directing the government to respond to any outstanding interrogatories propounded to it by Mr. Vinzant. (Doc. 167). We disagree on both points, and find no sanctionable conduct on the government's part.

1. *Rule 26*

Fed. R. Civ. P. 26(a) states, in relevant part, that

a party must, without awaiting a discovery request, provide to the other parties:

(I) the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that information--*that the disclosing party may use to support its claims or defenses*, unless the use would be solely for impeachment;

4

> (ii) a copy--or a description by category and location--of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and *may use to support its claims or defenses*, unless the use would be solely for impeachment;

(emphasis added). As the text of the rule makes clear, only information which may be used to support the disclosing party's claims or defenses is subject to the initial disclosure requirement. See Morris v. Zerlin, No. 07-02787, 2007 WL 3231546, at *2 (E.D. La. Oct. 29, 2007) ("[I]nitial disclosures must include information that would be used to support the disclosing party's claims or defenses . . . ."). The rule deliberately distinguishes between information (including identifying and contact information) that the disclosing party does and does not anticipate using:

> The 2000 amendments [to Rule 26] restored national uniformity to discovery/disclosure practice. At the same time, they responded to what seemed the most vigorous and enduring criticism of disclosure—that it might require a party to volunteer harmful material without a discovery request. Thus, as amended Rules 26(a)(1)(A)(I) and (ii) require initial disclosure of any witness or document "that the disclosing party may use to support its claims or defenses." This means that there is no requirement to disclose anything that the disclosing party will not use, which may include much that is harmful to its case. Since the disclosure obligation is limited to material that the disclosing party may use in support of its case, the link to particularity in pleading that was inserted as part of the 1993 amendment was removed.

8A Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2053 (3d ed. 1998) (footnotes omitted); accord 6 James Wm. Moore et al., Moore's Federal Practice § 26.22[4][a][ii] (3d ed. 2007) ("Each party must disclose identifying information only for those persons the party anticipates it will use to support its claims or defenses. Rule 26(a)(1)(A) no longer requires parties to provide identifying information for persons whom it does not intend to use during the

proceeding, regardless whether they possess information that is favorable or unfavorable to the disclosing party . . . . The focus is on persons who have information that the disclosing party may use.") (footnotes omitted).

In this case, the government was under no duty to produce identifying information for the inmate witnesses as part of its initial disclosures. Whether the was in possession of this information when the initial disclosures were exchanged (which is not entirely clear), the government did not anticipate using the testimony of the inmate witnesses "to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(I). Thus, the government did not fail to comply with Rule 26(a) by not disclosing the contact information of the inmate witnesses, and the Court will impose no sanction on this claim.

### 2. *The Court's Discovery Order*

Mr. Vinzant also alleges that counsel for the government has violated the Court's discovery order. As noted above, on May 19, 2010, the Court ordered the government to "respond to any outstanding interrogatories propounded . . . by the Plaintiff" within ten calendar days. (Doc. 166). Mr. Vinzant concedes that the government timely responded on May 28, 2010. However, Mr. Vinzant nonetheless claims that the government failed to comply with the Court's order, presumably in the substance of its answer to interrogatories.

We have reviewed the government's most recent responses of May 28, 2010. (Doc. 171-1, Exh. 1). While these responses contain numerous objections, they do not violate the Court's order. Specifically, we ordered the government to "respond" to

the discovery requests, not necessarily to provide the contact information of the inmate witnesses, or to otherwise respond in the manner specifically requested by Mr. Vinzant. The government, like any other party, is entitled to object to interrogatories, as long as "[t]he grounds for objecting to an interrogatory . . . [are] stated with specificity." Fed. R. Civ. P. 33(b)(4).[2] We will consider the merits of the government's objections in due course. But the form, substance, and timing of those objections is not inappropriate. Moreover, as the government points out, Mr. Vinzant has not filed a motion to compel production of the contact information for the inmate witnesses up to this point. As such, the government has not breached an order compelling disclosure, and is still entitled to object to the interrogatories. We find no abuse or disregard of our discovery order in the government's responses, and thus, no sanctionable conduct on this point.

### 3. *Other Issues*

Mr. Vinzant contends that the government attorneys have "falsified information to the court [sic] and Plaintiff." (Doc. 171, p. 7). In particular, he claims that one government attorney stated during a teleconference that the government was in possession of contact information for the inmate witnesses, and another attorney stated that the government required a court order to retrieve the records from other agencies. While we agree that, during the teleconferences, there was

---

[2] Mr. Vinzant expresses frustration regarding the government's continued refusal to disclose the contact information. Although we understand that Mr. Vinzant has requested and has been denied this information numerous times, we must also recognize that Mr. Vinzant has not petitioned any court to compel its disclosure. The issue of its discoverability is now before the Court, and we will address the propriety of the government's objections herein. But the simple fact that the government has objected to disclosing the contact information does not imply any malice or "flouting" of this Court's order, as Mr. Vinzant alleges. (Doc. 171, p. 11).

7

some confusion as to what contact information the government attorneys actually had, we find that confusion understandable. The first government attorney to conference with the Court was not lead counsel, and quite candidly expressed that she was unfamiliar with the details of the case. The second attorney, who is lead counsel for the government, clarified that he is the fourth attorney to handle this matter in its nearly four-year history, and was not entirely certain what information prior counsel may have received. Neither attorney made an unqualified, unequivocal statement that they were or were not in possession of the contact information for the inmate witnesses during these teleconferences. Therefore, neither statement can justify a sanction.

Additionally, Mr. Vinzant claims that counsel for the government attempted to mislead him and the Court by stating that no new discovery deadline has been announced in this case, and that the discovery period has not been reopened. (Doc. 171, p. 8). While we recognize that the last standing discovery deadline set by the previous district judge was September 25, 2009 (Doc. 91), we also note that, on January 20, 2010, the case was transferred to this Court for all future proceedings. (Doc. 156). We advised both parties, by teleconference, that some limited discovery would be allowed before trial. In doing so, we attempted to allow the parties some flexibility, and to handle matters somewhat informally, given the logistical difficulties that persist in this case. That process may have led to some misapprehensions on the government's part, but once again, may not support any sanction against counsel

for the government.[3] Because we find no failure on the part of counsel for the government to "obey an order to provide or permit discovery" under Fed. R. Civ. P. 37(b)(2), or other misconduct which may warrant relief under that rule, Mr. Vinzant's Motion for Sanctions (Doc. 171) will be DENIED.

### B. Motion for Protective Order

#### 1. *The Magistrate Judge's Order*

On December 11, 2009, the government filed a Motion to Quash Subpoena (Doc. 127), seeking to preclude disclosure of the contact information for the inmate witnesses. Mr. Vinzant had served a subpoena to the Probation Department on November 12, 2009, seeking "[a]ll documents that refer, relate, or pertain in any way to the contact information of individuals listed on this subpoena and/or incident report between the years of 2005 and 2009." (Doc. 127-3, Exh. 1). The magistrate judge granted the government's motion for three very specific and well-founded reasons: (1) under the deadlines in effect at the time of the motion, "the subpoena was not timely"; (2) the subpoena was "too broad"; and (3) Mr. Vinzant "failed to demonstrate[] good cause for the Probation Department to release confidential information." (Doc. 135, p. 2). We agree with the magistrate judge's findings and analysis, but now find it necessary to clarify the scope of the order.

First, the order declared the subpoena untimely. As a reminder, the subpoena and order were issued before the case was transferred to this Court. Therefore, the

---

[3] The government's remaining arguments, which overlap with its own motion for protective order, will be discussed below. We also do not consider the government's other objections to Mr. Vinzant's discovery requests, which have no bearing upon this motion, but which may have provided valid explanations for the difficulties in discovery that Mr. Vinzant perceived.

standing discovery deadline in effect at that point was September 25, 2009. (Doc. 91). Mr. Vinzant issued the subpoena on November 26, 2009, nearly two months past that deadline. Clearly, the subpoena was untimely.

We agree with the magistrate judge that the subpoena, as originally crafted, sought a volume of information regarding the inmate witnesses which was far too broad. It basically requested *any* contact information of *any kind* relative to the inmate witnesses which may have been collected or recorded *over a four-year period*. Mr. Vinzant's interrogatory is even broader in scope, seeking the same *type* of information *over a ten year-period*. (Doc. 171-1, p. 3). The magistrate judge specifically noted that the subpoena was "not limited to documents which would reveal the last known address of the prisoners." (Doc. 135, p. 2). Again, both the subpoena and the interrogatory suffer from the same defect in this regard.

Finally, the magistrate judge correctly noted that Mr. Vinzant failed to offer any compelling justification for disclosing the contact information. Instead, Mr. Vinzant stated that "(1) his prior counsel failed to secure the information; (2) the United States has been dilatory in moving to quash the subpoena; and (3) the information is needed for his case." (Doc. 135, p. 2). As we will address below, the government still maintains that Mr. Vinzant has failed to demonstrate any compelling need for disclosure of the contact information for the inmate witnesses.

In sum, all of the rationales for the magistrate judge's decision were valid. However, the magistrate judge did not find that the contact information is absolutely protected by privacy concerns. Rather, the order concluded that the subpoena, as it

was drafted, should be quashed. The magistrate judge's order is therefore not a bar to further consideration of the disclosure issue. Rather, it related to the particular subpoena issued to the Probation Department under the circumstances of the case as they existed on December 21, 2009. The magistrate judge's order properly quashed Mr. Vinzant's subpoena. It does not address the circumstances presently before the Court.

### 2. *Standards for Protective Order*

Whether to grant a party's request for a protective order is a decision which generally rests within the "sound discretion" of the district court. Nguyen v. Excel Corp., 197 F.3d 200, 209 & n.27 (5th Cir. 1999). Under Fed. R. Civ. P. 26(c)(1)(A), the Court may "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery." To fulfill the "good cause" requirement, "'[t]he burden is upon the movant to show the necessity of [the protective order's] issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'" *In re* Terra Int'l, Inc., 134 F.3d 302, 306 (5th Cir. 1998) (quoting United States v. Garrett, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

### 3. *The Privacy Act*

The government maintains that disclosure of the contact information sought by Mr. Vinzant would infringe upon the privacy rights of the inmate witnesses. In order to properly evaluate this argument, we must consider the interplay between two

11

federal statutes - the Privacy Act, 5 U.S.C. § 552a *et seq.*, and the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.* - as they apply to the facts of this case. The government maintains that both statutes prohibit the disclosure of the records Mr. Vinzant seeks. We find to the contrary, because neither statute bars the limited disclosure which will be allowed in this case.

We begin with a discussion of the Privacy Act.[4] "[T]he basic purpose of the [Privacy] Act is to protect an individual against an 'invasion of personal privacy.'" Johnson v. Dep't of Treasury, I.R.S., 700 F.2d 971, 976 (5th Cir. 1983). The statute provides that "[n]o agency shall disclose any record which is contained in a system of records by any means of communication to any person . . . except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record" falls within one of twelve enumerated exceptions. See 5 U.S.C. § 552a.[5] "To be a Privacy Act record, the information must be both (1) 'about' the individual and (2) linked to that individual by name or identifying particular." Pierce, 512 F.3d at 188. By this standard, information which is not "purely unique or immutable identifying information," such as telephone numbers or addresses, as well as outdated contact information, may be protected by

---

[4] In truth, the Privacy act does not act as an independent restraint upon requests for disclosure of information, but rather, "provides for a private cause of action whenever a governmental agency fails to comply with the requirements of the act in a way that has an adverse effect on an individual." Doe v. Veneman, 380 F.3d 807, 820 (5th Cir. 2004). The government's concern is that, upon disclosing the information improperly, the inmate witnesses may seek damages in such a private cause of action. We consider this argument to address the government's concern.

[5] "To establish that an agency failed to comply with the Privacy Act, a plaintiff must demonstrate that: (1) the information is a 'record' within a 'system of records;' (2) the agency disclosed the information; (3) the disclosure adversely affected the plaintiff; and (4) the disclosure was willful or intentional." Pierce v. Dep't of U.S. Air Force, 512 F.3d 184, 186 (5th Cir. 2007).

the Privacy Act, as long as the information is linked to the individual by a "name or identifying particular." See id. at 188-89. Therefore, the last known addresses and telephone numbers of the inmate witnesses, even if now outdated, are protected information under the statute.

Under the circumstances of this case, however, we have some doubt that any Privacy Act "record" would need to be produced to comply with Mr. Vinzant's interrogatory. The statute defines the term "record" to mean "any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph." 5 U.S.C. § 552a(a)(4). Mr. Vinzant's interrogatory seeks production of "all contact information that . . . relate [sic] to any and all listed inmate witnesses." (Doc. 171-1, p. 3). We will restrict the scope of Mr. Vinzant's interrogatory to producing the last known address and phone number of each inmate witness, as we have advised the parties, by a separate writing rather than a formal "record." Nonetheless, we will look beyond this issue, because the information sought implies a privacy concern, no matter what form of transmission the government may choose or the Court may order.

Assuming, then, that Mr. Vinzant's interrogatory calls for the production of a "record," two Privacy Act exceptions potentially apply in this case. The first is that disclosure would be "required under section 552 of this title," which is the FOIA. 5

U.S.C. § 552(b)(2). We will consider the import of that statute below. The second exception, which we will refer to as the "court order exception," is that disclosure would be "pursuant to the order of a court of competent jurisdiction." Id. § 552(b)(11). Under this clear statutory language, an order by this Court to disclose the contact information would invoke an exception which would absolve the government of any potential liability under the Privacy Act. See Gilbreath v. Guadalupe Hosp. Found. Inc., 5 F.3d 785, 791 (5th Cir. 1993). Other courts have ruled that the "court order exception" overrides a government objection to an interrogatory requesting the production of government records. See, e.g., Stiward v. United States, No. 05-1926, 2007 WL 2417382, at *1-2 (E.D. La. Aug. 24, 2007) (collecting cases, and overruling a Privacy Act objection to an interrogatory under the "court order exception"). Accordingly, we find that the "court order exception" to the Privacy Act will preclude any future liability for disclosure, thereby alleviating the government's concern and nullifying its objection to the interrogatory.

   3.   *The Freedom of Information Act*

As noted above, we must consider the overlap between the Privacy Act and its close counterpart, the FOIA. The Fifth Circuit recently described the interrelationship between the two statutes as follows: "While the Privacy Act was designed to provide individuals with more control over the gathering, dissemination, and accuracy of agency information about themselves, FOIA was intended to increase the public's access to governmental information and was drafted with a strong presumption for disclosure to allow public scrutiny of government processes." Pierce, 512 F.3d at 191.

While recognizing the overlap between the Privacy Act and the FOIA, the court concluded that "the two statutes work fundamentally differently," and present particularly glaring conflicts in certain areas. Id. at 192.

Again, the FOIA contains a strong presumption favoring disclosure. Id. at 191.[6] Congress intended the statute to "'pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'" Cooper Cameron Corp. v. U.S. D.O.L., 280 F.3d 539, 545 (5th Cir. 2002) (quoting Dep't of the Air Force v. Rose, 425 U.S. 352, 361 (1976)). However, neither the identity nor the motives of the party requesting disclosure is relevant under the FOIA, and a party's asserted need for information as part of a civil discovery request is likewise immaterial. Id.

The government argues that the information sought by Mr. Vinzant is subject to two exemptions under the FOIA, which prohibit disclosure of the information. However, this argument presents the threshold question of whether the FOIA may act as a prospective bar to discovery in a case in which no FOIA proceedings have been instituted, or FOIA arguments raised, by the party seeking discovery. Stated differently, we must determine whether the government may employ FOIA exemptions as discovery exemptions. We find that the answer to either form of the question is "no." Therefore, we do not reach the issue of whether the FOIA exemptions cited by the government would apply to Mr. Vinzant's interrogatory.

---

[6] Like Privacy Act claims, FOIA claims are commonly raised in private lawsuits. "Jurisdiction in a FOIA suit is based upon the plaintiff's showing that an agency has (1) improperly (2) withheld (3) agency records." Goldgar v. Office of Admin., 26 F.3d 32, 34 (5th Cir. 1994). Mr. Vinzant did not make an FOIA request, per se, to a particular federal agency. He requested material as part of the civil discovery process which would require disclosure from federal agencies. Nonetheless, we consider this argument for the same reasons as articulated above regarding the Privacy Act.

The distinction between the functions of civil discovery and disclosure under the FOIA are critical to this conclusion. In what has become a landmark opinion on this subject, the Fifth Circuit held that

> the discovery provisions of the Federal Rules of Criminal Procedure and the FOIA provide two independent schemes for obtaining information through the judicial process. Although information obtained through the FOIA may be useful in a criminal trial, we find that the FOIA was not intended as a device to delay ongoing litigation or to enlarge the scope of discovery beyond that already provided by the Federal Rules of Criminal Procedure.

United States v. Murdock, 548 F.2d 599, 602 (5th Cir. 1977). In that case, the defendant had been convicted of income tax evasion. Id. at 599. On appeal, the defendant claimed that he was entitled, under the FOIA, to certain government documents which may have supported his claim for selective prosecution. Id. at 599, 601. In denying the defendant relief under the FOIA, the Court reasoned that, "[s]ince Congress has the power to regulate the practice and procedures in the federal courts, had Congress intended to amend the explicit discovery procedures set forth in Rule 16, Fed. R. Crim. P., by enactment of the FOIA, it undoubtedly could have done so." Id. at 602. Finding no such congressional intent, the court maintained the distinction between civil discovery rules and the FOIA.[7]

The Murdock court's holding arises in the factual context of a party's attempt to *expand* its rights to disclosure using the FOIA, and in addition to ordinary

---

[7] Among the opinions cited by the Murdock court is the Supreme Court's opinion in N. L. R. B. v. Sears, Roebuck & Co., 421 U.S. 132 (1975). In that case, the Court noted that the FOIA "is fundamentally designed to inform the public about agency action and not to benefit private litigants." Id. at 144 n.10. Much more recently, and in a related context, the Fifth Circuit has specified that the "FOIA was not intended to be a substitute for discovery." Cooper Cameron Corp., 280 F.3d at 548 & n.39.

discovery procedures. In this case, however, we encounter the opposite situation: *the government's* attempt to use the FOIA to *restrict* the scope of discovery. Moreover, unlike Murdock, no claim to the information has been made pursuant to the FOIA in this case (of which we are aware). However, we see no reason, under logic or precedent, to deviate from the distinction between procedural rules and the FOIA established by the Court in Murdock. Given the objective of the statute - enhancing the public's access to government information to permit closer public scrutiny of governmental processes - the Murdock court's distinction is even more persuasive in this context. Rather, we observe that the Federal Rules of Civil Procedure pertaining to discovery and the FOIA "provide two independent schemes for obtaining information through the judicial process," and therefore decline to erect a discovery exemption rooted in the FOIA. Murdock, 548 F.2d at 602.[8]

Furthermore, the District of Columbia Circuit also addressed the same issue confronting this court, and held as follows:

> Statutes insulating information from publication are aimed at the broadcasting of sensitive information to the general populace; the statutes are not intended to enjoin the limited kind of disclosure encountered in judicial proceedings.
> . . . .
>
> If information in government documents is exempt from disclosure to

---

[8] We are aware of the Fifth Circuit's statement that "it is not an abuse of discretion for a trial court to refuse to compel discovery where the requested discovery seeks the contents of documents allegedly exempt from disclosure under the FOIA and Privacy Act." May v. Dep't of Air Force, 777 F.2d 1012, 1017 (5th Cir. 1985). This statement, however, can be fairly characterized as dictum. The court offers no rationale for the statement, which appears in a footnote at the end of the opinion. Nonetheless, the court did not suggest that a district court must prohibit disclosure of if information sought during discovery which is "exempt from disclosure under the FOIA and Privacy Act." Id. Therefore, even under this outlying case, there is no mandatory discovery exemption under either the FOIA or the Privacy Act.

the general public under FOIA, it does not automatically follow the information is privileged within the meaning of rule 26(b)(1) and thus not discoverable in civil litigation. The FOIA acts as a "floor" when discovery of government documents is sought in the course of civil litigation. Though information available under the FOIA is likely to be available through discovery, information unavailable under the FOIA is not necessarily unavailable through discovery.

Friedman v. Bache Halsey Stuart Shields, Inc., 738 F.2d 1336, 1344 (D.C. Cir. 1984) (internal citations omitted). Echoing the Fifth Circuit's reasoning, the court explained that "it is unsound to equate the FOIA exemptions and similar discovery privileges," because the two sets of rules are driven by different, and sometimes conflicting, considerations. See id. at 1344. The court did find, however, that "the courts must accord the proper weight to the policies underlying these statutory protections, and to compare them with the factors supporting discovery in a particular lawsuit." Id. More recent circuit opinions have upheld this reasoning.[9] Likewise, other district courts in our circuit have also observed the distinction between the FOIA and civil discovery rules.[10]

In this case, Mr. Vinzant seeks disclosure of the identifying information for the inmate witnesses only as a means of acquiring testimony in support of his tort claims

---

[9] See. e.g., Kamakana v. City and County of Honolulu, 447 F.3d 1172, 1185 (9th Cir. 2006) ("Neither will it suffice to show, as the United States argues, that a document merits sealing because it would be exempt from disclosure under the Freedom of Information Act . . . . Such exempt documents are not automatically privileged in civil discovery."); Gould, Inc. v. Mitsui Mining & Smelting Co., Ltd., 139 F.R.D. 244, 246 (D.C. Cir. 1991) (observing that the Friedman court "distinguished between disclosure under the FOIA and claims of privilege from discovery in civil litigation").

[10] See Reunion, Inc. v. F.A.A., No. 3:09CV269TSL-FKB, 2010 WL 1759562, at *2-3 (S.D. Miss. May 3, 2010) (finding that civil discovery and disclosure under the FOIA are not interchangeable or substitutable processes); Millennium Mktg. Group LLC v. United States, 238 F.R.D. 460, 462 (S.D. Tex. 2006) ("[A]n exemption available under FOIA does not necessarily preclude discovery."); OKC Corp. v. Williams, 489 F. Supp. 576, 586 & n.12 (N.D. Tex. 1980) (holding that, pursuant to Murdock, the FOIA and civil discovery are distinct, independent means of obtaining information).

against the government. He has never instituted proceedings under, or made mention of, the FOIA, to this Court's understanding. Further, he has articulated that this information is vital to obtaining testimony from material witnesses, whose views of the case may provide essential support to his position at trial. Given the fact that some of the inmate witnesses may still be incarcerated, locating them without the requested disclosure could be difficult, if not impossible. The government does not argue that the information is immaterial. The Court finds that the contact information for the inmate witnesses is relevant to this case, and Mr. Vinzant's request for it is appropriate and commonplace, insofar as that request is limited to the last known addresses and phone numbers of those witnesses.

Furthermore, although this Court is highly cognizant of the purposes of the FOIA, we find them completely inapposite in this case. Given the limited nature of the disclosure that we will permit - the last known addresses and phone numbers of the inmate witnesses - any perceived infringement upon the inmate witness' privacy rights would be inconsequential in any case.[11] And finally, we will not endorse the government's attempt to impose FOIA exemptions upon Mr. Vinzant as independent discovery requirements. We find it untenable to rule that, while a party may not expand its rights to disclosure of government records through an independent FOIA request, the government can narrow that same party's rights to disclosure by forcing

---

[11] Indeed, the government's only argument as to how disclosure of this basic contact information would constitute an "unwarranted invasion of personal privacy," as contemplated by both relevant FOIA exemptions, is that "the individuals whose information Vinzant seeks often did not provide this information thinking it might be disclosed to other private citizens." 5 U.S.C. §§ 552(b)(6), (b)(7)(C);(Doc. 172, p. 6). We find that concern insubstantial in this particular context, where the disclosure will be protected, limited, and warranted by the exigencies of this litigation.

that party to overcome FOIA exemptions.[12] There are no other obvious impediments to the constrained disclosure of the contact information for the inmate witnesses. Therefore, the government will be ordered to provide it.

## III. Conclusion

For the foregoing reasons, Mr. Vinzant's Motion for Sanctions (Doc. 171) will be DENIED. Likewise, the government's Motion for Protective Order (Doc. 177) will be DENIED. The government will provide, on the record and under seal, only the last known addresses and phone numbers of the sixteen inmates who were witnesses to the accident giving rise to this lawsuit as a response to Mr. Vinzant's interrogatory within thirty days of this Ruling.

SIGNED on this 29th day of June, 2010 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE

---

[12] Such a ruling would foster absurd consequences. Namely, if we adopted the government's position, then a party's rights to disclosure of government records would be severely hampered. The Supreme Court has held that the core purpose of the FOIA is "to open agency action to the light of public scrutiny." U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 772 (1989). In every case that did not involve scrutiny of government processes, however, a party seeking disclosure of government records would nonetheless be required to balance that purpose with any potential invasion of personal privacy. Left with no countervailing interest in scrutiny of government processes, litigants seeking ordinary, innocuous information in such suits would have little or no chance to obtain disclosure of government records of any kind under those circumstances. This would make for a potent and virtually unassailable discovery exemption which was very likely not contemplated by the drafters of either statute.