UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| MARK A. VINZANT | CIVIL ACTION NO. 1:06-cv-10561 |
| -vs- | JUDGE DRELL |
| UNITED STATES OF AMERICA | MAGISTRATE JUDGE SHUSHAN |

## RULING

A one-day bench trial in this matter was held Thursday, September 30, 2010. Following the close of evidence, we took the suit under advisement. We now address the merits of the suit and issue our findings of facts and conclusions of law in light of the evidence and arguments presented.

## BACKGROUND

Plaintiff Mark Vinzant ("Vinzant") was a federal prisoner in the custody of the U.S. Marshals Service. On July 7, 2005, he was being transported on Interstate 10 to Louis Armstrong International Airport near New Orleans when the van in which he was riding was involved in a collision. Upon his release from prison, he filed the present suit, claiming to have been physically injured in the crash and to have suffered intense pain and mental and physical problems since.

Plaintiff claims that the accident resulted from the negligence of the U.S. marshals driving his van. There were two vans transporting prisoners, and Vinzant was in the second, or trailing, van. In the midst of an apparently sudden, severe rainstorm, he alleges that the marshal continued to drive his van recklessly far in excess of the speed limit. He claims that, consequently, his van rear-ended the van in front of it when that van came to a stop, and it thereby caused a civilian car that was traveling behind to rear-end it a few seconds later. Doc. 217, p. 2.

Defendant denies these allegations. It claims that the marshals were driving safely and brought both vans "to an abrupt but complete stop." Doc. 212, p. 2. It claims that the collision only occurred when the civilian vehicle rear-ended the trailing van and "pushed" it into the first van. *Id* at 3. It also contests the nature, extent, and causation of Vinzant's injuries. *Id* at 6-7.

A bench trial on the merits was held to resolve the dispute.

## ANALYSIS

### I. Jurisdiction, Choice of Law, and Procedural Posture

The suit was filed under the Federal Tort Claims Act ("FTCA"), which, in part, vests district courts with original and exclusive jurisdiction over:

> civil actions . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful acts or omissions of any employee of the government while acting within the scope of his office or employment, under circumstances where the United States, if a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. §1346 (b)(1). The United States does not contest that all elements of this act, such as that the marshals were acting in the course and scope of their employment at the time of the accident, are met and sovereign immunity is thus waived. Doc. 212, p. 8. It also presents no other procedural reason, such as exhaustion of remedies or statute of limitations, why a decision on the merits cannot now be rendered.

The parties correctly agree that because the allegedly tortious action occurred in Louisiana, Louisiana's substantive tort law applies. 28 U.S.C. § 2674.

## II. Duty and (lack of) Breach

Louisiana's is a pure comparative fault regime, with the plaintiff bearing the burden of proving each element of liability by a preponderance of the evidence. La. C.C. art. 2323; *e.g.*, *Moffitt v. Sewerage & Water Bd. Of New Orleans*, 40 So.3d 336 (La.App. 4 Cir. 2010).

"For liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard of care, (2) the defendant failed to conform his conduct to the appropriate standard of care, (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries, (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries, and (5) actual damages." *Bates v. Prater*, 956 So.2d 814, 817 (La.App. 2 Cir. 2007) (internal citations omitted); *see also*, *Dixie Drive It Yourself Sys v. Am. Dev. Co.*, 137 So.2d 298 (La. 1962). As we find the Defendant did not breach its duty of care and thus was not negligent and is not liable for Plaintiff's injuries, only some of these elements are analyzed here.

*1. The United States owed a duty to Vinzant*

"Duty is a question of law." *Bates*, 956 So.2d at 817. Louisiana has no guest passenger statute. The claim of an automobile passenger is instead subject to the rules of ordinary negligence. A passenger is entitled to rely upon his driver unless there is some basis for the passenger's own negligence or liability. William E. Crawford, *Tort Law*, 12 *Louisiana Civil Law Treatise*, §14:14 (2d ed. 2009); *e.g.*, *Adams v. Security Ins. Co. Of Hartford*, 543 So.2d 480, 484-85 (La. 1989) (noting the exceptions to this rule, none of which are applicable here).

The United States does not contest that such an ordinary duty of care was owed to the passengers of its van, and that it is liable to Vinzant "for damages caused by its negligent act[s]," if any, in the driver's operation of the van in which Vinzant rode. Doc. 212, pp. 11-12,

2. *Vinzant did not demonstrate that the United States violated this duty*

"The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway." La. R.S. 32:81; *see, Phipps v. Allstate Ins. Co.*, 924 So.2d 1081, 1084 (La.App. 5 Cir. 2006); *Clark v. Natt*, 748 So.2d 584, 586 (La. App. 2 Cir. 1999). "The risk of a rear-end collision . . . is clearly within the scope of the statutory prohibition against following too close." *Bertrand v. Henry*, 815 So.2d 868, 871 (La. App. 3 Cir. 2001) (internal quotations and citations omitted).

"The following motorist in a rear-end collision is presumed to have breached this duty; accordingly, there is a rebuttable presumption that he is negligent." *Clark,* 748 So.2d at 586. "To rebut the presumption and avoid liability, the following motorist must prove that he had his vehicle under control, he closely observed the lead vehicle, and he followed it at a safe distance under the circumstances." *Bates*, 956 So.2d at 818.

Concretely, this presumption is usually overcome, and liability for damages from a rear-end collision by the following vehicle avoided, in one of two circumstances. First, the following motorist can show that the lead driver negligently created a hazard which could not reasonably be avoided. *Id*; *Holland v. State Farm Mutual Auto. Ins. Co.*, 973 So.2d 134, 137 (La.App. 2 Cir. 2007) (referring to this exception as the "sudden emergency doctrine"). Second, he can show that he successfully brought his vehicle to a stop and only impacted the first vehicle as a result of a third

4

vehicle's negligence in hitting him from behind. *Petty v. State Farm Mutual Auto. Ins. Co.*, 952 So.2d 767, 769 (La.App. 4 Cir 2007). If the second vehicle came to a complete stop, then the third driver is presumed to be solely liable for injuries resulting from the crash, even if the first vehicle had made a sudden or illegal stop. *Id.*

Here, we do not find that Vinzant carried his burden of demonstrating that the marshals failed to come to a complete stop and caused the rear-end collision.

The testimony on this point was evenly divided. Vinzant and his two accident witnesses claimed that the trailing van struck the lead van before stopping, while the marshals in the trailing van claimed to have come to a complete stop and been pushed into the lead van. We have some reasons to question the credibility of Vinzant and his witnesses. For one, they have all been convicted of crimes involving dishonesty. On the other hand, their convictions all involved schemes where the witness personally profited from his or her dishonesty, and aside from Vinzant himself, there is no indication that any of Vinzant's witnesses had anything to gain from their testimony. For two, their testimony was inconsistent in various ways in its details. For instance, Vinzant and his witnesses each estimated that the vans were traveling at different rates of speed. More importantly, they differed in their description of the sequence in which certain events transpired. Indeed, the testimony of one witness, Mr. Floyd Douglas Jr., was so far afield of that of everyone else that Vinzant repeatedly asked him on direct examination if he was "on any medication."

None of these factors, however, is dispositive for the Court. Instead, what is conclusive is that there is no reason to doubt the marshals' version of events. First, no evidence was introduced to impeach the marshals' credibility. This is not a case of alleged malfeasance where the marshals could be motivated to fabricate an untrue story to protect their department or personal reputation.

5

Likewise, they are not monetarily responsible for any damages here, and Vinzant alleges no other reason that they would proffer dishonest testimony.

Second, we found their version of events at least as credible and consistent as that of Vinzant. The discrepancies Vinzant brought out in his cross-examination, such as the marshals' different estimates of how many car lengths the trailing van had stopped behind the lead van, are minor and do not go to the heart of their story. They are all discrepancies in detail easily explained by - and, indeed expected secondarily to - the more than five years which have elapsed since the time of the accident.

Third, the testimony of the other party to the accident, the driver of the civilian vehicle, Damian Michael Every ("Mr. Every"), corroborates neither side's version of events. For instance, he described the general traffic conditions at the time of the accident to be completely different than how either the marshals or Vinzant described them. More importantly, he could neither confirm nor deny whether the van he hit had already struck the vehicle in front of it, or even whether it had already stopped. He specifically responded to a question on this point by saying only that he thought it was not stopped because he did not remember seeing its brake lights before he struck it. Meanwhile, in either the marshals' or Vinzant's version of events, the trailing van would have attempted to stop, thus activating its brake lights, and, either by colliding with the vehicle in front of it or by successful application of its brakes, it would have actually been stopped.

In describing this testimony, we note that Mr. Every had earlier been a named defendant in this suit, with the count against him being dismissed because it was prescribed by the statute of limitations. In his testimony, however, he inquired whether he was still a party and / or whether he could be held liable as a result of the proceedings. Thus, we are not surprised that he seemed more

6

concerned with clarifying what allegedly occurred behind him with regard to his own (lack of) fault than with clarifying the events in front of him. Nonetheless, the reality remains that his testimony does not help us resolve the issue of Vinzant's or the marshals' credibility.

Finally, we find that the other objective evidence, including the crash photographs and documents, lend no additional credence to either party. The photographs of the damage to the vans are what one would expect following a double-impact rear-end collision, with the damage to neither the front nor the back of either van being disproportionately severe or otherwise giving rise to an inference that one crash occurred first. Vinzant's analysis of the photographs with regard to Mr. Every's car are more compelling, and they cast serious doubt as to whether Mr. Every was actually pushed into the vans in front of him as he claims or hit them on his own. However, Mr. Every's negligence is not that of the United States, and thus whether he was negligent or whether an unknown, phantom vehicle was responsible is of no import for the United States' liability.

Therefore, finding no reason that Vinzant or his witnesses were more credible than the other side's witnesses and no other evidence to corroborate his story, we do not find it more likely than not that Defendant caused the crash and is liable for Vinzant's injuries resulting therefrom.

## CONCLUSION

Accordingly, we find that the United States is not liable to Vinzant for any damages resulting from his injuries, and we hereby enter judgment to that effect.

SIGNED on this 30 day of November, 2010, at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE